Mildred K. O'Linn (State Bar No. 159055)
   *missy.olinn@manningkass.com*
Yury A. Kolesnikov (State Bar No. 271173)
   *yury.kolesnikov@manningkass.com*
Roslynn Wilfert (State Bar No. 303024)
   *roslynn.wilfert@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California  90017-3012
Telephone:  (213) 624-6900
Facsimile:  (213) 624-6999

*Attorneys for Defendants City of Baldwin
Park, Eric Camacho, and Jose Castro*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL FRANCISCO SANCHEZ,<br><br>                                    Plaintiff,<br><br>        v.<br><br>CITY OF BALDWIN PARK, ERIC CAMACHO, JOSE CASTRO, and DOES 1–10, INCLUSIVE,<br><br>                                    Defendants. | Case No.:  2:23-cv-03807 DMG (MAR)<br><br>**Declaration of Yury A. Kolesnikov in Support of Defendants' Motion to Stay Action Pending Resolution of Plaintiff's Related Criminal State-Court Proceedings**<br><br>Judge:         Hon. Dolly M. Gee<br>Courtroom:  8C, 8th Floor<br>Date:          December 13, 2024<br>Time:          9:30 a.m.<br><br>Complaint Filed:    May 18, 2023<br>Trial Date:            April 8, 2025 |

I, Yury A. Kolesnikov, declare as follows:

1.      I am an attorney with Manning & Kass, Ellrod, Ramirez, Trester LLP, counsel for Defendants City of Baldwin Park, Eric Camacho, and Jose Castro in this action.  I submit this declaration in support of Defendants' motion to stay.

2.      The facts set forth in this declaration are based on my personal knowledge and documents maintained by Manning & Kass in the ordinary course of business.  These facts and events are true, or believed by me to be true, and I would testify competently to them if called upon to do so.

3.      Defendant's motion to stay is made following months-long e-mail correspondence between counsel as well as a telephonic conference of counsel that took place on October 25, 2024.  Specifically, the parties have been discussing the stay of this action pending the resolution of the related criminal proceedings since July 2024.  On September 16, 2024, counsel for Plaintiff indicated that they were agreeable to a stay of this action and would prepare a stipulation for Defendants' approval.  On October 11, 2024, Plaintiff's counsel reversed their position and indicated that they were no longer agreeable to a stay of this action.  Thereafter, the parties met and conferred by telephone on October 25, 2024, to discuss Defendants' motion to stay this action under *Heck* and *Younger*.  The parties were not able to reach an agreement, thus necessitating the filing of the present motion to stay.

4.      Attached as **Exhibit 1** is a true and correct copy of excerpts from the transcript from the deposition of Eric Camacho taken on April 4, 2024, highlighted for the Court's convenience.

5.      Attached as **Exhibit 2** is a true and correct copy of excerpts from the transcript from the deposition of Jose Castro taken on April 4, 2024, highlighted for the Court's convenience.

6.      Attached as **Exhibit 3** is a true and correct copy of the certified felony information in *People v. Sanchez*, Case No. KA133424 (Cal. Super. Ct., Cnty. of Los Angeles), filed on September 12, 2024.

Kolesnikov Declaration in Support of Defendants' Motion to Stay Action

7.      Attached as **Exhibit 4** is a true and correct copy of the certified minute orders entered in *People v. Sanchez*, Case No. KA133424 (Cal. Super. Ct., Cnty. of Los Angeles), between March 15, 2024, and September 19, 2024, highlighted for the Court's convenience.

8.      Attached as **Exhibit 5** is a true and correct copy of the case information for *People v. Sanchez*, Case No. KA133424 (Cal. Super. Ct., Cnty. of Los Angeles), obtained from the Los Angeles Superior Court website at https://www.lacourt.org/criminalcasesummary/ui/ on November 8, 2024, highlighted for the Court's convenience.

9.      Attached as **Exhibit 6** is a true and correct copy of e-mail correspondence between counsel regarding Defendants' motion to stay, highlighted for the Court's convenience.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 13, 2024, in San Diego, California.

_____*/s/ Yury A. Kolesnikov*_____
Yury A. Kolesnikov

Kolesnikov Declaration in Support of Defendants' Motion to Stay Action

# Exhibit 1

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

```
 1               UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ANGEL FRANCISCO SANCHEZ,           )
                                        )
 5                Plaintiff,            )
                                        )
 6                vs.                    )Case No.
                                        )2:23-CV-03807-DMG-MAR
 7   CITY OF BALDWIN PARK; ERIC CAMACHO; )
     JOSE CASTRO; and DOES 1-10, inclusive,)
 8                                      )
                  Defendants.           )
 9   _____)

10

11

12

13          REMOTE VIDEOCONFERENCE DEPOSITION OF

14                    ERIC CAMACHO

15              THURSDAY, APRIL 4, 2024

16

17

18

19

20

21

22   Reported Stenographically By:

23   Jinna Grace Kim, CSR No. 14151

24   Job No.:  57706

25
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 2

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4    ANGEL FRANCISCO SANCHEZ,               )
                                            )
5                    Plaintiff,             )
                                            )
6                    vs.                    )Case No.
                                            )2:23-CV-03807-DMG-MAR
7    CITY OF BALDWIN PARK; ERIC CAMACHO;    )
     JOSE CASTRO; and DOES 1-10, inclusive,)
8                                           )
                     Defendants.            )
9    _____)

10

11

12

13

14          The remote videoconference deposition of ERIC

15   CAMACHO, taken on behalf of the Plaintiffs, beginning at

16   10:01 a.m., and ending at 11:54 a.m., on Thursday, April 4,

17   2024, before Jinna Grace Kim, Certified Stenographic

18   Shorthand Reporter No. 14151.

19

20

21

22

23

24

25

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 5

```
 1                           CALIFORNIA

 2                     THURSDAY, APRIL 4, 2024

 3                          10:01 A.M.

 4                          ERIC CAMACHO,

 5  called as a witness on behalf of the Plaintiffs, having been

 6  first duly sworn remotely via videoconference, was examined

 7  and testified as follows:

 8                          EXAMINATION

 9  BY MR. GALIPO:

10      Q.   Can you please state your name?

11      A.   My name is Eric Camacho.

12      Q.   Have you ever had your deposition taken before?

13      A.   No.

14      Q.   Have you testified in court before?

15      A.   Yes, I have.

16      Q.   Do you have an estimate as to how many times you've

17  done that?

18      A.   Over 50.

19      Q.   Are you able to hear me so far?

20      A.   Yes, sir.

21      Q.   If you have any trouble hearing me at any time, will

22  you please let me know?

23      A.   I will.

24      Q.   Usually, I go about an hour and take a short break,

25  but if you need to take a break at name time before that,
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 13

1    the vehicle stopped at some point, someone got out, and

2    that's when the shooting happened?

3              MR. SMITH:  Vague and ambiguous.

4              You can respond --

5              MR. GALIPO:  I'm sorry, Craig.  Were you finished?

6              MR. SMITH:  No.  He can respond if he understands.

7              MR. GALIPO:  Okay.

8              THE WITNESS:  I remember we stopped the vehicle,

9    yes.

10   BY MR. GALIPO:

11       Q.   So I'm not asking about all the vehicles you saw

12   that day or the vehicles you attempted to stop.

13              I want to focus on the one that was involved in the

14   incident.

15              Do you understand what I'm getting at?

16       A.   Yes, sir.

17       Q.   What type of vehicle was that?

18       A.   It was a Chevy Tahoe.

19       Q.   Do you recall what color it was?

20       A.   Yes, I do.

21       Q.   What color?

22       A.   Black.

23       Q.   Could you tell if it was newer or older?

24       A.   It looked to be a newer Chevy Tahoe.

25       Q.   And where was the vehicle when you first saw it?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 14

1     A.   When I first saw it we were driving in approximately

2   500 feet away from us.  It was -- it parked facing -- not

3   parked, I'm sorry.  It was stopped at the stop sign of

4   Cavette facing eastbound at the intersection of Cavette and

5   Phelan Avenue.

6     Q.   Do you know how to spell Cavette for the court

7   reporter?

8     A.   Yes.  I can spell it phonetically.

9          It's C-a-v-e-t-t-e.

10     Q.   Okay.  And does Cavette run east and west?

11     A.   Yes, it does.

12     Q.   And then the cross street is Phelan, P-h-e-l-a-n?

13     A.   Correct.

14     Q.   Does Phelan run north and south?

15     A.   Yes, it does.

16     Q.   And is there a stop sign regulating the traffic

17   going eastbound on Cavette there?

18     A.   Yes, there is.

19     Q.   And do you know going eastbound at that intersection

20   how many lanes there are?

21     A.   It's a single lane eastbound on Cavette and a single

22   lane westbound on Cavette.

23     Q.   So when you first observed the Chevy Tahoe, were you

24   on Cavette?

25     A.   No.

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 15

1    Q.   What street were you on?

2    A.   On Phelan.

3    Q.   And what direction were you traveling?

4    A.   Northbound.

5    Q.   And are you saying when you first observed the Tahoe

6    the Tahoe was eastbound on Cavette?

7    A.   Correct.

8    Q.   And I think you said something like it was

9    approximately 500 feet away?

10    A.   Correct.

11    Q.   Was the Tahoe appeared to be stopped for that stop

12    sign?

13    A.   It did appear to be stopped for that stop sign, but

14    for quite awhile.

15    Q.   And what's the speed limit on Phelan, if you know?

16    A.   25 miles-an-hour.

17    Q.   And as you were traveling northbound on Phelan, do

18    you know how fast your vehicle was traveling approximately as

19    you were approaching Cavette?

20    A.   I don't recall, but it was a slow pace.

21         I would say about 20 miles-an-hour.

22    Q.   You think you were going under the speed limit at

23    that point?

24    A.   I do.

25    Q.   And do you have an understanding as to whether at

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 16

1    night someone that sees your vehicle from a distance would

2    know whether it was a police vehicle or not?

3            MR. SMITH:  Calls for speculation.

4            To the extent you understand, you can respond.

5            THE WITNESS:  Well, sir, my police vehicle that I

6    drive, it's specific.  It's different than a police vehicle.

7    It's more known to several members in the city of Baldwin

8    Park.  So it just depends on which, who you're asking, which

9    citizen you ask.

10   BY MR. GALIPO:

11       Q.   So you believe that some people might know it's an

12   unmarked police vehicle; others would not?

13       A.   Correct.

14       Q.   So as you're going northbound on Phelan, would the

15   Tahoe be ahead of you and to your left?

16       A.   Correct.

17       Q.   And what observations, if any, did you make

18   regarding the Tahoe as you were proceeding northbound on

19   Phelan?

20       A.   Well, sir, traveling northbound normally when it's a

21   residential street, me and may partner drive at a slow pace

22   just to be observant, maybe anyone breaking into cars, or

23   anyone committing any violations.  So we travel slow and

24   observant, and before we approached the intersection of

25   Cavette and, Phelan we saw the Tahoe stalled there for

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 17

1   several seconds before we arrived to the stop sign.

2       Q.    When say stalled there, do you mean it was

3   essentially stopped or stationary?

4       A.    It was stopped.

5       Q.    Anything else you noticed about the Tahoe as you

6   were approaching?

7       A.    As I was approaching once we reached the

8   intersection, I saw that the windows were tinted.

9       Q.    Which windows?

10      A.    The front right and front left windows of the

11  vehicle.

12      Q.    Anything else you noticed about it as you were

13  approaching?

14      A.    As I was approaching, it was just continuously

15  stalled there until I arrived to the intersection.

16      Q.    But am I correct to say that its position that it

17  was stopped was near a stop sign?

18      A.    Correct.

19      Q.    And anything else you noticed about it other than

20  what you've told me so far?

21      A.    About specifically about the vehicle, it was just

22  the all the windows were tinted except the front wind

23  shield.

24      Q.    Could you see the back of the vehicle from your

25  position?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 18

1      A.   No.

2      Q.   Did you tell your partner at the time that the

3   vehicle had tinted windows?

4           Did you mention that to your partner in the car at

5   the time?

6      A.   We did not mention it until seeing it for a few

7   seconds.

8      Q.   So there was a discussion between you and your

9   partner in the car about the vehicle having tinted windows?

10     A.   Correct.

11     Q.   How dark was the tint on the windows?

12     A.   It was the best I could do is compare to other

13   vehicles that are not tinted.

14          It was very difficult to see inside.

15     Q.   It was nighttime out at that time; correct?

16     A.   Correct, sir.

17     Q.   Now, at some point did you try to illuminate the

18   Tahoe?

19     A.   Yes, I did.

20     Q.   And how did you do that?

21     A.   So once I we reached the stop sign, I continuously

22   looked at that Tahoe, and it still was not moving.

23          So I illuminated my flashlight to the Tahoe in order

24   to check it out, and I confirmed that the windows were

25   tinted, and I continuously motioned my light towards the

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 19

1    Tahoe for about ten to fifteen seconds continuously.

2    Q.    Where was your vehicle at that time?

3          Were you still facing northbound on Phelan?

4    A.    Correct, sir.  So I was --

5    Q.    Did you -- go ahead.

6    A.    I was stopped facing northbound on Phelan.

7    Q.    Was there any stop sign for you at that position?

8    A.    Yes, there was.

9    Q.    So were you stopped at the stop sign?

10   A.    Correct.

11   Q.    So at this point you're stopped at the stop sign and

12   the Tahoe's stopped?

13   A.    Correct.

14   Q.    And from that position you attempted to illuminate

15   the Tahoe?

16   A.    Yes.

17   Q.    And you did that in part by using your flashlight?

18   A.    Correct.

19   Q.    Did you attempt to use the vehicle spotlight or

20   spotlights at that point?

21   A.    No.

22   Q.    And did you say you used your flashlight in part to

23   confirm that the windows were tinted?

24   A.    Correct.

25   Q.    How did that help you confirm the windows were

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 20

1  tinted?

2       A.   Well, the spotlight in my police unit is a little

3  older, and at the time I had a stream light which had a high

4  luminescent brightness than the spotlight on the vehicle.

5            So even with my hand-held flashlight which is

6  stronger than my spotlight, I still could not see clearly

7  through the front windshield -- front windows, I'm sorry.

8       Q.   Could you see anyone inside the car at that point?

9       A.   At that point, no.

10      Q.   Could you see through the front windshield from your

11  perspective?

12      A.   Yes.

13      Q.   Could you see the driver or any front seat passenger

14  at that time?

15      A.   I could see the driver.

16      Q.   Could you make out the gender or sex of the

17  driver?

18      A.   Yes.

19      Q.   What did it appear?

20      A.   Female driver.

21      Q.   Could you tell her race at that point?

22      A.   I could not.

23      Q.   How could you tell it was a female?

24      A.   Because it was thinner build and long hair.

25      Q.   At that point did you have a conversation with your

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 21

1  partner that you were going to try to pull the vehicle over

2  or make contact?

3      A.    Yes.

4      Q.    And tell me about that conversation, please.

5      A.    Well, prior to arriving to the stop sign, the Tahoe

6  was already stopped.  It was already stopped at the stop

7  sign.  So once he arrived to the stop sign, it was still

8  stopped for quite awhile about ten, fifteen seconds just

9  estimating.

10         So me and my partner talked about like is this

11  person drunk, like, what's going on, like how come it doesn't

12  want to go.

13         And I illuminated my flashlight, and the driver

14  still didn't want to go.  It was very confusing which led me

15  to believe that the driver was possibly drunk.

16      Q.    And did you discuss that with your partner?

17      A.    Yes.

18      Q.    And is that essentially the reason why you wanted to

19  pull the vehicle over and make contact with them?

20      A.    That coupled with the traffic violation, yes, sir.

21      Q.    Which traffic violation are you referring to?

22      A.    The window tint.

23      Q.    Up to that point in time did you see the vehicle

24  make any moving violations?

25      A.    The only moving violation that comes to mind at this

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Eric Camacho on 04/04/2024

Page 22

1   time is the unsafe stop and start.

2       Q.   I just want to make sure I'm understanding your

3   testimony.

4            From the time you first saw the Tahoe to the time

5   you and your partner decided you wanted to pull it over and

6   make contact, was it at a stop in the same position?

7       A.   Yes, it was.

8       Q.   You didn't see it like go through the stop sign or

9   make a unsafe lane change or anything at that point?

10      A.   No.

11      Q.   Would you pull vehicles over regularly?

12           And I mean, you know, on a daily basis for having

13  tinted windows?

14      A.   Yes.  I have several times before.

15      Q.   How often would you do that, if you know?

16           In other words, would it be like once a shift, once

17  a week, any estimate you want to give?

18      A.   Well, I can -- based on my patrol experience and at

19  the time the little that I had in Gang Enforcement, that was

20  just probably about once a day if whenever I was actively

21  patrolling that I would stop a vehicle.

22           Reason behind it is because with tinted windows it's

23  a safety hazard, and it's difficult for the drivers to see

24  especially during nighttime.

25      Q.   So would it be fair to say during the time frame in

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 23

```
1    the weeks or months leading up to this incident, you would

2    pull the vehicle over for tinted windows about once a

3    shift?

4        A.   Yes.

5        Q.   And are you saying it's a safety issue for the

6    drivers because they're not able to see?

7        A.   Correct.

8        Q.   So the vehicle was still stopped at the time you and

9    your partner decided you wanted to pull it over and make

10   contact?

11       A.   Correct.

12       Q.   And then did you change the position of your vehicle

13   to get behind the Tahoe?

14       A.   It wasn't until the vehicle was mobile and continued

15   northbound that we positioned ourselves behind it.

16       Q.   So at some point it proceeded?

17       A.   Correct.

18       Q.   But you're estimating it was stopped for somewhere

19   in the area of ten to fifteen seconds?

20       A.   Yes.  Upon our arriving to the stop sign, it was

21   stopped for ten or fifteen seconds before it actually

22   moved.

23       Q.   And then it finally moved?

24       A.   Correct.

25       Q.   And it would have crossed in front of you?
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 30

1   or use a portion of the car as cover and call the people

2   out?

3       A.   Yes.

4       Q.   In this case you're saying you didn't feel that

5   qualified for that scenario?

6       A.   Correct.

7       Q.   So you being the passenger officer, did you approach

8   the passenger side of the vehicle?

9       A.   Yes.

10      Q.   Do you know if your partner was approaching the

11  driver side?

12      A.   Yes.

13      Q.   Did you see him do that, or was that just your

14  understanding the way you normally would work?

15      A.   It was my understanding.

16      Q.   At some point do you either hear or see one of the

17  doors or the passenger side opening?

18      A.   Yes.

19      Q.   And was it one door or more than one door on the

20  passenger side that you saw opening?

21      A.   One door.

22      Q.   Was that the rear door?

23      A.   Yes.

24      Q.   And where were you in relation to the Tahoe when you

25  saw the rear door opening?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 31

1      A.   I was on the right side of the vehicle just south of

2   the right rear tire approximately like five to seven feet

3   from the rear right door.

4      Q.   I just want to ask you some follow-up to make sure I

5   understand where you were.

6           First of all, you're obviously on the passenger side

7   of the Tahoe?

8      A.   Correct.

9      Q.   Are you saying you're a little south of the right

10  rear tire?

11     A.   Correct.

12     Q.   Would you like be between the right rear tire and

13  the back bumper of the car?

14     A.   Correct.

15     Q.   And were you on the street at that point or on the

16  curb?

17     A.   It was like maybe between the curb and the sidewalk

18  and the raised curb.  I'm sorry, the street and the raised

19  curb.

20     Q.   I'm just trying to figure out, were you on the

21  street level, the curb level, or maybe a little of both?

22     A.   A little of both.

23     Q.   Did you say anything when you saw the door opening

24  to the occupants getting out like, stay in the car, or

25  anything like that?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 32

1     A.   Yes, I did.

2     Q.   What did you say?

3     A.   I said, "Stay in the car."

4     Q.   And can you hear that on your audio of the incident

5  or the dispatch?

6     A.   No.

7     Q.   How much time do you think passed from you seeing

8  the door open to you firing your first shot?

9     A.   It was very quick.  I would say less than a few

10  seconds between one to two seconds.

11     Q.   Other than "stay in the car," did you give any other

12  commands before you fired?

13     A.   I didn't have any time, sir.

14     Q.   I'm assuming you did not give a verbal warning; you

15  were going to shoot because of the time issue?

16     A.   Correct.

17     Q.   Before the door opened of the car, did you have

18  anything in your hands as you were approaching the car?

19     A.   Just my personal flashlight.

20     Q.   Okay.  Are you right-handed or left?

21     A.   I'm right-handed.

22     Q.   Was your holster on the right side?

23     A.   Correct.

24     Q.   Was your weapon holstered when you were approaching

25  the car?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 33

1    A.    No.  My weapon was out.

2    Q.    That's what I'm trying to figure out.

3    A.    Okay.

4    Q.    When did you pull your firearm out?

5    A.    Once I exited the car I had my weapon at a parallel

6    facing down to my holster.

7    Q.    And why did you have your firearm out at that

8    point?

9    A.    Just based on the circumstances of the driver's

10   actions, it was very odd the area that I was in.

11          It was a gang area, and I knew there was a gang

12   party just one house northwest of where the vehicle finally

13   stopped.

14   Q.    Were you thinking that someone could possibly have a

15   gun in the car?

16   A.    Yes.  That comes to my mind.

17   Q.    So I guess it gets back to my question as to why you

18   didn't take a position of cover; why you just approached the

19   vehicle in the manner you did.

20          MR. SMITH:  Argumentative.

21          You can respond.

22          THE WITNESS:  You know what, sir, every situation is

23   different.  It's kind of evolving.  We're not trained for

24   every incident because every incident is different.

25          And unfortunately, at that time I didn't feel it was

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 34

1    relevant for me to take a tactical vantage.

2            However, once the vehicle was stopped, I kind of

3    gathered my thoughts and I realized I'm in this gang area; I

4    know there's gang members around, and just to be safe I then

5    unholstered my weapon.

6    BY MR. GALIPO:

7        Q.    Did you recognize the person you were shooting at

8    before you fired?

9        A.    No.

10       Q.    How many shots did you fire?

11       A.    I would say two to three.

12       Q.    Do you know if there was a round count done on your

13   weapon?

14       A.    Yes.

15       Q.    And do you know if it was determined how many shots

16   you actually fired?

17       A.    Yes.

18       Q.    And what is your understanding of that

19   determination?

20       A.    Four shots.

21       Q.    So with your weapon you would have had to press the

22   trigger four times; is that correct?

23       A.    Correct.

24       Q.    Was the individual you were firing at completely out

25   of the car before you started firing, or was he in the

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 35

1    process of getting out when you started firing?

2        A.    He was out of the car once I started firing.

3        Q.    And what part of his body were you firing at

4    initially?

5        A.    I was facing him face-to-face.

6        Q.    And so were you generally facing northbound?

7        A.    Correct.

8        Q.    And you're saying that the individual you were

9    shooting at was facing southbound?

10       A.    Correct.

11       Q.    So you would have been shooting at his center mass

12   from your position?

13       A.    Correct.

14       Q.    And would the center mass from your position had

15   been his chest, stomach area?

16       A.    Correct.

17       Q.    Do you recall what the individual was wearing?

18       A.    Yes, I do.

19       Q.    What was he wearing?

20       A.    He was wearing jeans, oversized baggy jeans, and an

21   oversized like flannel.

22       Q.    Did you see at some point a gun in the person's

23   hand?

24       A.    Yes, I did.

25       Q.    Did you yell out "gun" at that time to alert your

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 38

1      A.    Correct.

2      Q.    And then as he completed his turn, his back would be

3   to you?

4      A.    Correct.

5      Q.    As he was turning away from you, could you see the

6   gun at that point?

7      A.    After the shooting it just happened so fast, sir.

8            It's kind of difficult to remember, but I just

9   initially remember the gun pointing at my head, and after the

10  shooting he brought the gun lower to his chest and continued

11  turning.

12     Q.    Do you recall in your statement saying that you

13  saw -- strike that.

14           How much time passed from you seeing the gun to you

15  firing your first shot?

16     A.    A second, sir.

17     Q.    Was it a split second?

18     A.    Split second.

19     Q.    And do you recall in your statement saying that when

20  you initially saw the gun, it was pointed towards the sky?

21     A.    Correct.

22     Q.    Did you ever say in your original statement that the

23  gun was pointed at your head, specifically?

24     A.    No.

25     Q.    So what my question is to you is, when you saw him

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 39

1    turning counterclockwise when he got to the let's say,

2    halfway through the turn facing east, could you see the gun

3    specifically at that point?

4        A.   Yes.

5        Q.   When he completed his turn, could you see the gun?

6        A.   No.

7        Q.   And where was the gun when he was halfway through

8    his turn facing east, if you know?

9        A.   I would say his chest area.

10       Q.   Was the gun pointed at you at that point?

11       A.   The only time the gun was pointed at me was when he

12   was facing me which if we're looking at a clock, it would be

13   south towards me.

14           That's the only time he pointed a gun to me.

15       Q.   So would you at least agree that when he turned away

16   from you and he was initially facing east, the gun was not

17   pointed at you at that point; would you agree that?

18       A.   Correct.

19       Q.   And then when he was turned away from you, you would

20   agree you didn't see the gun pointed at you; is that fair?

21       A.   Yes.

22       Q.   Now --

23       A.   I think there is connectivity issues.

24       Q.   What happened?

25       A.   Oh, I'm sorry.  I thought we lost you.

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 44

1    Q.   Did you find any gun on him?

2    A.   On his person, no.

3    Q.   Did you see any gun within five feet of him where he

4    was laying on the ground?

5    A.   We did recover a weapon, a firearm east of where he

6    was, an approximation could be within five to twenty feet

7    from him.

8    Q.   When you say we recovered a firearm, who are you

9    referring to?

10   A.   At the time it was Officer Jimenez who --

11   Q.   Did he -- sorry.  Go ahead.

12   A.   Officer Jimenez who came to assist, and we

13   eventually did find a firearm.

14   Q.   How long did it take, if you know, approximately

15   before you found the firearm?

16   A.   It wasn't until the scene was contained and deemed

17   safe.  So several minutes after the incident.

18   Q.   Five minutes, ten minutes, do you have any

19   estimate?

20   A.   I would say more than fifteen.

21   Q.   And then when you found this firearm more than

22   fifteen minutes after the shooting, where was it?

23   A.   It was east of where Mr. Sanchez was laying, east of

24   where Mr. Sanchez was laying inside someone's front yard on

25   the ground.

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Eric Camacho on 04/04/2024

Page 48

1    that it was Mr. Sanchez prior to shooting him; you didn't

2    realize that till afterwards; is that a fair statement?

3        A.    Yes, sir.

4        Q.    But regarding the other incident you had with

5    Mr. Sanchez, are you saying that he tried to run away and

6    toss the gun?

7        A.    He was with Xavier Mercado [phonetic] who is known

8    as Nutty Boy from Northside Parke [phonetic] criminal street

9    gang, and they both were walking together.

10            And then they both took off running, and Xavier

11   Mercado is the one that tossed a gun.

12       Q.    I see.  So it sounds like at some point in this

13   incident, you did see Mr. Sanchez running or starting to run

14   on the sidewalk; is that correct?

15       A.    Yes, sir.  So going back to it, once he -- as he's

16   pointing his gun to me, that's when I fired my weapon.

17            He turned and ran northbound.

18       Q.    And when he ran northbound, that's when you heard

19   another shots or shot?

20       A.    Correct.

21       Q.    How many other shot or shots did you hear?

22       A.    I can only remember one.

23       Q.    And were you able to see Mr. Sanchez running when

24   you heard the shot?

25       A.    Briefly.  I remember him running -- I remember

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

Page 62

1    statements at the scene as to why you fired your shots?

2       A.    Just normal protocol.  We're instructed after a

3    officer-involved shooting to be separated, not make any

4    statements until Homicide and our attorneys are present.

5       Q.    Okay.  I have nothing further.

6          MR. GALIPO:  Thank you.  I thought of just one other

7    question.

8                          EXAMINATION

9    BY MR. GALIPO:

10      Q.    I know you didn't yell out "gun" or "drop it" before

11   you fired your shots.

12          Did you yell "gun" or "drop it" after he turned away

13   and started running away from you?

14      A.    No, I did not, sir.

15      Q.    Okay.

16          MR. GALIPO:  Jinna, do you have any questions of any

17   of us or maybe Craig, how he wants his transcripts?

18          It's probably been awhile.

19          COURT REPORTER:  Yes.  Do you have any preference?

20          MR. SMITH:  No.  Electronic version is fine.

21          I assume we're going by code?

22          COURT REPORTER:  Yes.

23          (Deposition proceeding concluded at 11:54 a.m.)

24                          *  *  *

25

Page 63

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Eric Camacho on 04/04/2024

3  Case Name:  Angel Francisco Sanchez vs. City of Baldwin, et

4  al.

5  Date of Deposition:  April 4, 2023

6  Job No.:  57706

7

8          I, ERIC CAMACHO              , hereby certify

9  under penalty of perjury under the laws of the State of

10 California that the foregoing is true and correct.

11         Executed this  5  day of  JUNE         ,

12 20 24 , at BALDWIN PARK  , California.

13

14

15

16

17

18                    _____
                              ERIC CAMACHO
19

20

21

22

23

24

25

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Eric Camacho on 04/04/2024**

```
 1                        CERTIFICATE

 2                           OF

 3          CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5          I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8          That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10          That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12          That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15          Further, that the foregoing is an accurate

16   transcription thereof.

17          I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21          IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  April 4, 2024.

23

24          _____
             Jinna Grace Kim, CSR No. 14151
25
```

# Exhibit 2

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Jose Castro on 04/04/2024**

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ANGEL FRANCISCO SANCHEZ,           )
                                        )
 5              Plaintiff,              )
                                        )
 6              vs.                     )Case No.
                                        )2:23-CV-DMG-MAR
 7   CITY OF BALDWIN PARK; ERIC CAMACHO; )
     JOSE CASTRO; and DOES 1-10, inclusive,)
 8                                      )
                Defendants.             )
 9   _____)

10

11

12

13        REMOTE VIDEOCONFERENCE DEPOSITION OF

14                    JOSE CASTRO

15            THURSDAY, APRIL 4, 2024

16

17

18

19

20

21

22   Reported Stenographically By:

23   Jinna Grace Kim, CSR No. 14151

24   Job No.:  57706

25
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Jose Castro on 04/04/2024**

Page 2

```
 1                  UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ANGEL FRANCISCO SANCHEZ,            )
                                         )
 5                 Plaintiff,            )
                                         )
 6                 vs.                   )Case No.
                                         )2:23-CV-03807-DMG-MAR
 7   CITY OF BALDWIN PARK; ERIC CAMACHO; )
     JOSE CASTRO; and DOES 1-10, inclusive,)
 8                                       )
                   Defendants.           )
 9   _____)

10

11

12

13

14          The remote videoconference deposition of JOSE

15   CASTRO, taken on behalf of the Plaintiffs, beginning at 1:00

16   p.m., and ending at 2:22 p.m., on Thursday, April 4, 2024,

17   before Jinna Grace Kim, Certified Stenographic Shorthand

18   Reporter No. 14151.

19

20

21

22

23

24

25
```

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Jose Castro on 04/04/2024

Page 5

1                          CALIFORNIA

2                    THURSDAY, APRIL 4, 2024

3                          1:00 P.M.

4                          JOSE CASTRO,

5    called as a witness on behalf of the Plaintiff, having been

6    first duly sworn remotely via videoconference, was examined

7    and testified as follows:

8                          EXAMINATION

9    BY MR. GALIPO:

10        Q.   Can you please state your name?

11             Are you able to hear me?

12        A.   I'm able to hear you now, sir.

13        Q.   Did I freeze up for a moment?

14             MR. GALIPO:  Let's go off the record just for a

15    moment.

16             (Brief pause in the proceeding.)

17    BY MR. GALIPO:

18        Q.   Can you please state your name?

19        A.   Jose Castro.

20        Q.   Are you now able to hear me okay?

21        A.   Perfectly.

22        Q.   Good.  If you have any trouble hearing me at any

23    time, will you please let me know?

24        A.   I will.

25        Q.   Who do you currently work for?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 13

```
 1      A.   No.

 2      Q.   Any information that any of the occupants had been

 3   involved in any criminal activity?

 4      A.   No.

 5      Q.   Was the Tahoe essentially stationary during the time

 6   you saw it stopped at the stop sign?

 7      A.   Yes.  It was stationary before I reached the

 8   intersection, and it was still stationary when I arrived at

 9   the intersection.

10      Q.   At some point was there discussion with your partner

11   that you wanted to pull the Tahoe over?

12      A.   Yes.

13      Q.   And what was that based on?

14      A.   Based on the tinted windows.

15      Q.   Anything else?

16      A.   Yes.  Several factors.  Based on the fact that the

17   vehicle did not proceed into the intersection, I also noticed

18   that the occupants were not distracted.  They were just

19   looking straight ahead, and that's not common.

20           That's -- to me that's something that could be many

21   factors.  Could be someone under the influence or they're

22   trying to hide something, or I don't know.  It was just a lot

23   of factors that came into play at the time.

24           And then the fact that there was no signal either.

25           So I didn't know whether they were going left or
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 17

1       Q.   Flee from the vehicle with the weapon?

2       A.   Yes.

3       Q.   And you told me about your experience with people

4   fleeing and trying to toss the weapon?

5       A.   Correct.

6       Q.   Did you consider taking cover at your vehicle before

7   approaching this vehicle?

8       A.   No.

9       Q.   You felt confident that it was safer for your

10   partner approaching without cover?

11       A.   Yes.  We were confident in our abilities, and I felt

12   it was warranted.  It's not a felony traffic stop, so it's

13   not -- it wasn't needed at that time.

14       Q.   It wasn't a high-risk stop; correct?

15       A.   Correct.

16       Q.   And you approached the driver side?

17       A.   I did.

18       Q.   Did you say anything or give any commands to anybody

19   in the vehicle before you heard shots?

20       A.   No.

21       Q.   Did you hear anyone yell out "gun" before you heard

22   shots?

23       A.   I heard something, but I did not hear what was being

24   said.

25       Q.   Did you make out words "drop it?"

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 18

1        Did you hear that specifically before you heard the

2    shots?

3      A.   No.

4      Q.   Did you hear any verbal warning that shots were

5    going to be fired?

6      A.   No.

7      Q.   Where were you positioned relative to the vehicle

8    when you heard the shots?

9      A.   I think at the time I was at the left rear of the

10   left rear door of the Tahoe.

11     Q.   Where did it sound to you like the shots were coming

12   from?

13     A.   Where my partner was located on the right side.

14     Q.   So you considered one of the possibilities, that

15   your partner fired the shots?

16     A.   Yes.

17     Q.   How many shots did you hear?

18     A.   I heard two shots.

19     Q.   Your department did not have body-worn cameras at

20   the time?

21     A.   No, sir.

22     Q.   Do you have body-worn cameras now?

23     A.   We do.

24     Q.   In the assignment you had at the time, do those

25   people working that assignment now have body-worn cameras?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 19

1      A.    Yes, they do.

2      Q.    Is there any audio recording of this shooting that

3   you're aware of?

4      A.    No.

5      Q.    So when you hear the shots are you able to see your

6   partner?

7      A.    Yes.

8      Q.    And where is he when you hear the shots?

9      A.    He is -- at that point I looked to my right and he

10  is I would say about three feet, four feet to the rear of the

11  Tahoe as he's moving backwards like kind of stumbling back.

12     Q.    When you say to the rear of the Tahoe, you mean

13  three or four feet behind it which I guess would be south of

14  it?

15     A.    Yes.

16     Q.    So you were at the left rear of the driver side rear

17  of the Tahoe when you heard the shots?

18     A.    Yes.

19     Q.    They sound like they were coming from your right?

20     A.    Yes --

21     Q.    Did you --

22     A.    At that that point -- I'm sorry.  Go ahead.

23     Q.    No.  I didn't mean to stop you.  Go ahead.

24     A.    Yeah.  At that point when I heard the gunshots, I

25  immediately separated myself from the vehicle to -- so I went

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Jose Castro on 04/04/2024

Page 20

```
 1    to the west portion which I ultimately ended up in the

 2    middle, more like the middle of the street.

 3         Q.   But it sounds like when you heard the shots, you

 4    were at the left rear of your vehicle; they sounded like they

 5    were coming from your right where your partner was; you

 6    looked over and you saw your partner about four feet behind

 7    the Tahoe.

 8              Do I have that correct?

 9    A.   That's correct.

10    Q.   And then you tactically repositioned?

11    A.   That's correct.

12    Q.   And you tactically repositioned to where?

13    A.   From that point I moved forward, and I -- to get a

14    better picture of what was going on, I wanted to see who was

15    inside the vehicle or who was actually shooting, I moved

16    forward to the front portion, the front left of the Tahoe.

17    Q.   Did you have any cover at that point?

18    A.   I still did, yes.

19    Q.   And were you using the Tahoe as cover?

20    A.   Yes.

21    Q.   When you saw your partner, when you heard the shots,

22    could you see if he had a weapon in his hands?

23    A.   I only saw his both of his hands extended forward,

24    but I couldn't see the firearm.

25    Q.   Were they extended forward in a position consistent
```

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Jose Castro on 04/04/2024**

Page 21

1   with a shooting stance?

2        A.   Yes.

3        Q.   So did it lead you to believe he at least most

4   likely had his firearm out at the time?

5        A.   Yes.  Most definitely.

6        Q.   Could you see into the Tahoe at this point?

7        A.   I was able to see the driver and the right front

8   passenger.

9        Q.   They were still in the Tahoe?

10       A.   Yes.

11       Q.   And could you see where either one of their hands

12   were at that point?

13       A.   No.

14       Q.   At some point do you see someone running northbound

15   on the east sidewalk?

16       A.   I do.

17       Q.   And do I have the ordering of your observations

18   correct; that you heard the shots; glanced over at your

19   partner; observed him in the position you indicated with his

20   arms extended; then tactically reposition; then looked into

21   the car; then saw the person running northbound on the east

22   sidewalk.

23            Do I have the ordering correct?

24       A.   Yes, you do.

25       Q.   And when you saw the person running northbound on

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 22

1  the east sidewalk, were you positioned near the driver's door

2  of the Tahoe?

3      A.   No.  I was more towards the front left fender.

4      Q.   And which way were you -- was your upper body

5  direction when you saw this person running northbound on the

6  east sidewalk?

7      A.   At that time he was running -- I saw the silhouette

8  of him running in between the Tahoe and the fence of the

9  property which my position was facing I would say east,

10  southeast at the time.

11      Q.   And how would you describe his gait?

12           Was he jogging, running fast?

13           How would you described what you observed?

14      A.   No.  He was running fast.

15      Q.   You shot at some point; correct?

16      A.   I did.

17      Q.   How many shots did you fire?

18      A.   Just one.

19      Q.   And were you stationary when you fired the shot?

20      A.   I was.

21      Q.   Would you have the weapon in both hands?

22      A.   I did.

23      Q.   Were you in some type of a shooting stance?

24      A.   Yes.

25      Q.   How far would you estimate the individual running on

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 23

1   the sidewalk was from you when you first saw him?

2      A.   Can you clarify that because there's different

3   observations from what you're asking.

4      Q.   Sure.  I want to take it from the time when you

5   first saw him.

6      A.   Okay.

7      Q.   It might be his silhouette.

8      A.   Correct.

9      Q.   But when you first saw him or his silhouette, how

10  far was he from you at that point?

11     A.   I would say about ten or fifteen feet.

12     Q.   And he would have been running eastbound on the

13  sidewalk at that point?

14     A.   No.  It would have been north.

15     Q.   North.  I misspoke.

16           Northbound on the east side?

17     A.   That's correct.

18     Q.   And then how much time do you think passed between

19  seeing him and firing your shot?

20     A.   So from when I first saw the silhouette of him

21  running in between the vehicle and the block fencing to the

22  point where I shot him, I'm guessing less than three

23  seconds.

24     Q.   And how much distance do you think he traveled on

25  the sidewalk from when you first saw him to when you shot

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Jose Castro on 04/04/2024**

Page 27

1    Q.   And is one of the reasons you only fired one shot

2    because when you fired your shot, he immediately went down?

3    A.   Yes.

4    Q.   And at least you have the impression at that point

5    that your shots struck him; is that fair?

6    A.   I did.  However, I wasn't sure if I hit him or not,

7    but after reading the Los Angeles County evidence report, I

8    learned that my impact did not impact him, did not struck

9    him.

10    Q.   But what I'm asking you at the time, your impression

11   was that it struck him because he immediately went down after

12   you fired?

13    A.   He went down, but I did not know whether I struck

14   him or not.

15    Q.   But your impression was that you may have struck

16   him, that's why he immediately went down?

17        MR. SMITH:   Asked and answered; calls for

18   speculation.

19        You may answer again.

20        THE WITNESS:   Like I said, I don't know whether I

21   struck him or not.

22   BY MR. GALIPO:

23    Q.   I'm not asking you that.  I'm just -- it sounds

24   like, and I read in your statement where you didn't fire a

25   second shot because he immediately went down after your first

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
**Jose Castro on 04/04/2024**

Page 35

1      A.   Because I actually told him that I didn't see the

2   arms swinging.

3      Q.   So when it says just arms swinging, and there is a

4   yes, that's a mistake?

5      A.   If you go further down, I reply by saying I didn't

6   see actually arm swinging.  I just saw him.

7      Q.   I see.  Saw more of a silhouette.

8      A.   Correct.

9      Q.   Okay.  Fair enough.

10           And then on Page 27, how many steps do you think you

11   saw him taking altogether before you fired at him?

12      A.   Maybe 15, 20 steps.

13      Q.   And just so we're clear, when you fired you

14   intentionally fired your weapon?

15      A.   Yes.

16      Q.   And you were attempting to strike him?

17      A.   So based on the totality of the circumstances, I

18   just thought that, you know, when I saw my partner -- back

19   everything that was going on, you know, him running and keep

20   in mind, he did make a northwest facing me towards me, and I

21   feared that he was going to shoot me.

22           So I reacted and I shot at him.

23      Q.   No.  My question is, you were intending to strike

24   him when you shot at him?

25      A.   Yes.

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Jose Castro on 04/04/2024

Page 41

1  something like that?

2      A.   Yes.

3      Q.   And you were aware at that point that your partner

4  had shot him; also; correct?

5      A.   I don't -- yes, I think so.

6      Q.   And you were aware that you had shot him or shot at

7  him as well?

8      A.   Yes.

9      Q.   Do you recall him telling you to call his mom that

10 he's passing out, or words to that effect?

11     A.   Yes, I do recall.

12     Q.   Now, do you know if when you saw him on the ground

13 in the position you described, was there any weapon around

14 him within five feet that you saw?

15     A.   No.

16     Q.   Do you know if any weapon was recovered from his

17 person when he was approached and searched?

18     A.   No.

19     Q.   You don't know, or there wasn't?

20     A.   There was no weapon recovered on his person.

21     Q.   To your knowledge, was a weapon recovered from

22 somewhere afterwards?

23     A.   Yes.

24     Q.   And where was that weapon recovered from, if you

25 know?

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 42

1      A.    It was recovered just north of where the Tahoe was

2    parked on front lawn of a property.

3      Q.    Okay.

4      A.    I'm sorry.  Correction on that.

5            It was east of where the Tahoe was parked.

6      Q.    Okay.  I'm glad you said that because just when I

7    thought I had the directions figured out, I said, oh.

8            So the front of the Tahoe is facing north;

9    correct?

10     A.    Yes.

11     Q.    And was it over some fence or wall separating the

12   sidewalk from the front yard of a property?

13     A.    Yes.

14     Q.    And so where directionally from the Tahoe where

15   would it have been over the wall?

16           Towards the rear of the Tahoe, the mid part of

17   Tahoe, understanding it would be east of the Tahoe?

18     A.    I wouldn't be able to answer that.

19           Honestly I don't know whether it was -- it could

20   have been towards the front portion of Tahoe like the hood

21   area in relation to that.

22     Q.    But you just recall it being east of the Tahoe, but

23   you're not exactly sure what part of the Tahoe?

24     A.    That's correct.

25     Q.    And did you yourself see the gun in that position

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 46

1    the curb lines?

2        A.    I'm sorry.  I don't understand the question.

3        Q.    That's okay.  In other words, if there was an

4    imaginary line down the middle of the street, you would have

5    been close to that?

6        A.    Yes.

7        Q.    But as you explained earlier, offset in the middle

8    of the street, but offset from the front driver side of the

9    Tahoe?

10       A.    Front driver side fender of the Tahoe.

11             MR. GALIPO:  Craig, do you have any questions of the

12   sergeant today?

13             MR. SMITH:  I don't.

14             MR. GALIPO:  Will you guys be okay if I don't ask

15   anymore questions and end early?

16             MR. SMITH:  Yes.

17             THE WITNESS:  Thank you, sir.

18             MR. GALIPO:  Thank you.

19             (Deposition proceeding concluded at 2:22 p.m.)

20                            *   *   *

21

22

23

24

25

**ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL**
Jose Castro on 04/04/2024

Page 47

1

2          DECLARATION UNDER PENALTY OF PERJURY

3

4    Case Name:  Angel Francisco Sanchez vs. City of Baldwin, et

5    al.

6    Date of Deposition:  April 4, 2023

7    Job No.:  57706

8

9          I, _Jose Castro_____, hereby certify

10   under penalty of perjury under the laws of the State of

11   California that the foregoing is true and correct.

12          Executed this _10th_ day of _JUNE_____,

13   20_24_, at _BALDWIN PARK____, California.

14

15

16

17

18

19                              _____
                                    JOSE CASTRO
20

21

22

23

24

25

ANGEL FRANCISCO SANCHEZ vs CITY OF BALDWIN PARK, ET AL
Jose Castro on 04/04/2024

Page 48

```
 1

 2                           CERTIFICATE

 3                               OF

 4            CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 5

 6            I, JINNA GRACE KIM, CSR No. 14151, a Certified

 7   Stenographic Shorthand Reporter of the State of California,

 8   do hereby certify:

 9            That the foregoing proceedings were taken before me

10   at the time and place herein set forth;

11            That any witnesses in the foregoing proceedings,

12   prior to testifying, were placed under oath;

13            That a verbatim record of the proceedings was made

14   by me, using machine shorthand, which was thereafter

15   transcribed under my direction;

16            Further, that the foregoing is an accurate

17   transcription thereof.

18            I further certify that I am neither financially

19   interested in the action, nor a relative or employee of any

20   attorney of any of the parties.

21

22            IN WITNESS WHEREOF, I have subscribed my name, this

23   date:  April 4, 2024.

24            _____

25            Jinna Grace Kim, CSR No. 14151
```

# Exhibit 3

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

FILED
Superior Court of California
County of Los Angeles

**SEP 12 2024**

David W. Slayton, Executive Officer/Clerk of Court

By: M. Vargas, Deputy

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br> Plaintiff, <br><br> v. <br><br> **01  ANGEL SANCHEZ (DOB: 10/28/2001),** <br> **aka ANGEL FRANCISCO SANCHEZ** <br><br> Defendant(s). | CASE NO. KA133424 <br><br> *I N F O R M A T I O N* <br><br> Arraignment Hearing <br> Date: 09/19/2024 <br> Department: PS M |

## INFORMATION
## SUMMARY

| Ct. No. | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC 245(d)(1) | 4-6-8 +10 State Prison | SANCHEZ, ANGEL | | |

The District Attorney of the County of Los Angeles, by this Information alleges that:

COUNT 1

On or about May 21, 2021, in the County of Los Angeles, the crime of ASSAULT WITH A FIREARM UPON A PEACE OFFICER OR FIREFIGHTER, in violation of PENAL CODE SECTION 245(d)(1), a Felony, was committed by ANGEL SANCHEZ, who did willfully and unlawfully commit an assault with a firearm upon the person of ERIC CAMACHO when said defendant(s), ANGEL SANCHEZ knew and should have known that said person was a peace officer then and there engaged in the performance of his/her duties.

It is further alleged that, pursuant to Penal Code section 1203.095, there is a presumptive minimal jail time required if you are convicted of this charge.

NOTICE: Upon a felony conviction for the above offense, prison custody time is to be served in state prison based upon the above felony offense being a serious felony defined in Penal Code section 1192.7 and/or violent felony defined in Penal Code section 667.5(c), or a felony offense requiring registration as sex offender pursuant to Penal Code section 290(c), within the meaning of Penal Code section 1170(h)(3).

* * * * *

**NOTICE:  Conviction of this offense will require the defendant to provide DNA samples and print impressions pursuant to Penal Code sections 296 and 296.1.  Willful refusal to provide the samples and impressions is a crime.**

**NOTICE:  Any allegation making a defendant ineligible to serve a state prison sentence in the county jail shall not be subject to dismissal pursuant to Penal Code § 1385.**

**NOTICE:  Conviction of this offense prohibits you from owning, purchasing, receiving, possessing, or having under your custody and control any firearms, and effective January 1, 2018, will require you to complete a Prohibited Persons Relinquishment Form ("PPR") pursuant to Penal Code § 29810.**

THIS INFORMATION CONSISTS OF 1 COUNT(S).

Filed in Superior Court,
County of Los Angeles

DATED: ___SEP 1 2 2024___

GEORGE GASCÓN
DISTRICT ATTORNEY
County of Los Angeles,
State of California

BY: 

MANUEL GARCIA, JR.
DEPUTY DISTRICT ATTORNEY

/DB

Pursuant to Penal Code Section 1054.5(b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code Section 1054.3.

I certify that this is a true and correct copy of the original on file in or issued from this office, consisting of ____ pages.

DAVID W. SLAYTON, Executive Officer/Clerk of the Superior Court of California, County of Los Angeles

Date:_____ By_____ Deputy



I certify that this is a true and correct copy of the original on file in or issued from this office, consisting of 2 pages.

**DAVID W. SLAYTON**, Executive Officer/Clerk of the Superior Court of California, County of Los Angeles.

Date: 10/28/24  By: _____ ,Deputy

M. Olono

# Exhibit 4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## El Monte Dept. - 1

**ELMKA133424-01**                                                    **March 15, 2024**

**The People of the State of California**                                        **8:30 AM**
**vs.**
**SANCHEZ, ANGEL**

Honorable Rob B Villeza, Judge
S. Guevara, Judicial Assistant                    Stacy Molina (#14064), Court Reporter

---

PC245(d)(1)

**NATURE OF PROCEEDINGS:** Bench Warrant Hearing

The following parties are present for the aforementioned proceeding:

    ANGEL SANCHEZ, Defendant
    Andrew James Binandeh, Deputy Alternate Public Defender
    Larry Allen Holcomb, Deputy District Attorney

The matter is called for Bench Warrant Hearing.

Alternate Public Defender's Office is appointed.

Arrest warrant is recalled and quashed.

The Defendant is arraigned.

Advisement of statutory and constitutional rights is waived.

Reading of the accusatory pleading is waived.

The Defendant waives advisement of military rights pursuant to Penal Code section 858.

Defendant states true name as charged.

A copy of the Complaint and the arrest report are given to defendant's counsel.

The Defendant pleads not guilty to Count 001, PC245(d)(1).

The Defendant denies any and all allegations.

Early Disposition Hearing Day 0 of 30 is set for **Thursday, May 16, 2024,** at **8:30 AM** in **El Monte Dept. - 1**.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## El Monte Dept. - 1

ELMKA133424-01                                                March 15, 2024

**The People of the State of California**                                   8:30 AM

**vs.**

**SANCHEZ, ANGEL**

The Defendant waives time, and 60 day waiver is also taken.

The Defendant is ordered to return on the above date.

Defendant Released on Own Recognizance.

**O.R. Conditions:**

BLANK01: Defendant ordered confined to the following address with the exception of religious reason(s), grocery shopping, and Doctor appointments only:
4828 Elizabeth St., Baldwin Park, CA

Defendant to enroll in electronic monitoring by 03/19/2024, with proof to be shown at next hearing date of 05/16/2024.

PROB12: Obey all laws and orders of the Court.

PROB20: Submit your person and property to search and seizure at any time of the day or night, by any probation officer or other peace officer, with or without a warrant, probable cause, or reasonable suspicion.

WEA04: Do not own, use or possess any dangerous or deadly weapons, including any firearms, knives or other weapons.

Order for release issued, AS058428.

The Court orders a Pre-Plea report pursuant to Penal Code section 1203.7. The Defendant's counsel does not consent to a pre-plea interview.

Minute Order prepared by V. De La Hay on March 22, 2024

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## El Monte Dept. - 1

ELMKA133424-01                                                    May 16, 2024

**The People of the State of California**                          8:30 AM

**vs.**

**SANCHEZ, ANGEL**

Honorable Rob B Villeza, Judge
V. Yoshioka, Judicial Assistant                    Kim Yokoyama (#12617), Court Reporter

---

PC245(d)(1)

**NATURE OF PROCEEDINGS:** Early Disposition Hearing

The following parties are present for the aforementioned proceeding:

    ANGEL SANCHEZ, Defendant
    Andrew James Binandeh, Deputy Alternate Public Defender
    Larry Allen Holcomb, Deputy District Attorney

---

The matter is called for Early Disposition Hearing.

Preliminary Hearing Setting Day 0 of 30 is set for **Thursday, July 25, 2024,** at **8:30 AM** in **El Monte Dept. - 1**.
The Defendant waives time.
The Defendant is ordered to return on the above date.

Defendant Remains on Own Recognizance.

---

Minute Order                                              Page **1** of 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## El Monte Dept. - 1

**ELMKA133424-01**                                                       **July 25, 2024**

**The People of the State of California**                                **8:30 AM**
**vs.**
**SANCHEZ, ANGEL**

Honorable Rob B Villeza, Judge
V. Yoshioka, Judicial Assistant                    Veronica Porras (#12703), Court Reporter

---

PC245(d)(1)

**NATURE OF PROCEEDINGS:** Preliminary Hearing Setting

The following parties are present for the aforementioned proceeding:

ANGEL SANCHEZ, Defendant
Andrew James Binandeh, Deputy Alternate Public Defender
Larry Allen Holcomb, Deputy District Attorney

---

The matter is called for Preliminary Hearing Setting.

Preliminary Hearing Day 29 of 30 is trailed to **Thursday, September 5, 2024,** at **8:30 AM** in **El Monte Dept. - 3**.

The Defendant is ordered to return on the above date.

Defendant Remains on Own Recognizance.

---

Minute Order                                                 Page **1** of **1**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Criminal Division
### El Monte Dept. - 3

ELMKA133424-01                                                    September 5, 2024
                                                                       8:30 AM
**The People of the State of California**
**vs.**
**SANCHEZ, ANGEL**

Honorable Javier Perez, Judge
Y. Thomas, Judicial Assistant                        Elena Wight (#14374), Court Reporter

---

PC245(d)(1)

**NATURE OF PROCEEDINGS:** Preliminary Hearing

The following parties are present for the aforementioned proceeding:

    ANGEL SANCHEZ, Defendant
    Andrew James Binandeh, Deputy Alternate Public Defender
    Megan Ryan Callaghan, Deputy District Attorney

---

The matter is called for Preliminary Hearing.

The Defendant waives advisement of constitutional rights.

People's oral motion/request to designate McGaughey as the investigating officer and allow them to remain at counsel table is granted.

Eric Camacho and Yvette Gonzalez are placed under oath and testify for the People.

The People rest. No affirmative defense is offered and all sides rest.

The Defendant's oral motion to dismiss for insufficiency of the evidence is heard, argued, and denied.

The Defendant's oral request to remain on his own recognizance is heard and granted.

The Court finds sufficient cause as to count(s) 1, and the Defendant is Held to Answer to Pomona South Dept. - M, for Arraignment on Thursday, September 19, 2024, at 8:30 a.m.
The Defendant is ordered to return on the above date.

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Criminal Division
### El Monte Dept. - 3

**ELMKA133424-01**                                    **September 5, 2024**

**The People of the State of California**                        **8:30 AM**
**vs.**
**SANCHEZ, ANGEL**


Defendant Released on Own Recognizance.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## Pomona South Dept. - M

ELMKA133424-01                                    September 19, 2024

**The People of the State of California**                        8:30 AM

**vs.**

**SANCHEZ, ANGEL**

Honorable Mike Camacho, Judge
E. Mendez, Judicial Assistant                    Monica Ponce (#11334), Court Reporter

---

PC245(d)(1)

**NATURE OF PROCEEDINGS:** Arraignment

The following parties are present for the aforementioned proceeding:

    ANGEL SANCHEZ, Defendant
    Alexander Paguio Sario, Deputy Alternate Public Defender
    Thomas Jesse Goff V, Deputy District Attorney

---

The matter is called for Arraignment.

Department M being dark, case is heard by Judge Camacho in Department P.

The Defendant is arraigned.

Advisement of statutory and constitutional rights is waived.

Reading of the accusatory pleading is waived.

The Defendant waives advisement of military rights pursuant to Penal Code section 858.

The Defendant pleads not guilty to Count 001, PC245(d)(1).

The Defendant denies any and all allegations.

On Defendant's motion, Pretrial Conference/Trial Setting Day 0 of 60 is set for **Tuesday, October 29, 2024,** at **8:30 AM** in **Pomona South Dept. - M**.
The Defendant waives time.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Criminal Division
## Pomona South Dept. - M

**ELMKA133424-01**

**September 19, 2024**

**The People of the State of California**

**8:30 AM**

**vs.**

**SANCHEZ, ANGEL**

The Defendant is ordered to return on the above date.

Defendant Remains on Own Recognizance.

The following document(s) is/are filed this date:

Miscellaneous Document Proof of Electronic Monitoring



I certify that this is a true and correct copy of the original on file in or issued from this office, consisting of _____ pages.

DAVID W. SLAYTON, Executive Officer/Clerk of the Superior Court of California, County of Los Angeles

Date: _____ By: _____ Deputy



I certify that this is a true and correct copy of the original on file in or issued from this office, consisting of _8_ pages.

DAVID W. SLAYTON, Executive Officer/Clerk of the Superior Court of California, County of Los Angeles.
Date: 10/28/24 By: _____ ,Deputy

M. Olono

# Exhibit 5



### Case Information for ELMKA133424-01

[Print]  [New Search]

**Case Number**
ELMKA133424-01

**Defendant ID**
01

**Filing Date**
7/26/2023

**Arrest Date**
7/26/2023

**Filing Courthouse**
Pomona Courthouse South

**Case Type**
Felony

**Case Title**
The People of the State of California vs. SANCHEZ, ANGEL

Charges

Parties

Proceedings

Bail

Sentencing

Events

Register of Actions

**The Charges tab does not display non guilty pleas. Please check the Events tab for non guilty pleas.**

1 record(s). Type a keyword to filter.

| Count | Charge Statute | Plea | Last Disposition | Notes |
|-------|----------------|------|------------------|-------|

| 001 | PC245(d)(1)-F Assault With Firearm on Peace Officer/Firefighter | | **Offense Date:** <mark>5/21/2021</mark> |

▼ | 7 record(s). Type a keyword to filter.

| Name | Party Type |
|------|-----------|
| The People of the State of California | Plaintiff |
| Thomas Jesse Goff | <ul><li>Attorney for The People of the State of California</li><li>Deputy District Attorney</li></ul> |
| Larry Allen Holcomb | <ul><li>Attorney for The People of the State of California</li><li>Deputy District Attorney</li></ul> |
| Megan Ryan Callaghan | <ul><li>Attorney for The People of the State of California</li><li>Deputy District Attorney</li></ul> |
| ANGEL SANCHEZ | Defendant |
| Alexander Paguio Sario | <ul><li>Attorney for ANGEL SANCHEZ</li><li>Deputy Alternate Public Defender</li></ul> |

### Future Proceedings

| Date | Time | Type | Result | Location | Department |
|------|------|------|--------|----------|-----------|
| | | | | | |

| 01/08/2025 | 08:30AM | Pretrial Conference/Trial Setting | | Pomona South | Dept. - M |

## Past Proceedings

| Date | Time | Type | Result | Location | Department | |
|------|------|------|--------|----------|------------|---|
| 10/29/2024 | 08:30AM | Pretrial Conference/Trial Setting | Held - Continued by Defendant | Pomona South | Dept. - M | |
| 09/19/2024 | 08:30AM | Arraignment | Held - Proceedings | Pomona South | Dept. - M | |
| 09/05/2024 | 08:30AM | Preliminary Hearing | Held - Preliminary Hearing | El Monte | Dept. - 3 | |
| 07/25/2024 | 08:30AM | Preliminary Hearing Setting | Held - Proceedings | El Monte | Dept. - 1 | |
| 05/16/2024 | 08:30AM | Early Disposition Hearing | Held - Proceedings | El Monte | Dept. - 1 | |
| 03/15/2024 | 08:30AM | Bench Warrant Hearing | Held - Proceedings | El Monte | Dept. - 1 | |
| 07/27/2023 | 08:30AM | Judicial Action | Proceedings Heard | El Monte | Dept. - 1 | |
| 07/26/2023 | 08:30AM | Docket Line Entry | Proceedings Heard | El Monte | Clerk's Office | |

## Custody Status

| Date | Type | Group Type |
|------|------|------------|
| 10/29/2024 | Remains on Own Recognizance | By Case |
| 9/19/2024 | Remains on Own Recognizance | By Case |
| 9/5/2024 | Released on Own Recognizance | By Case |
| 7/25/2024 | Remains on Own Recognizance | By Case |

| 5/16/2024 | Remains on Own Recognizance | By Case |
| 3/15/2024 | Released on Own Recognizance | By Case |
| 7/27/2023 | Warrant Bail Set | By Warrant |

## Bonds Information

No Bonds Information.

## Sentencing

No Sentencing Information.

**The Events tab only displays search warrants and non guilty pleas. (See the Charges tab for guilty pleas)**

▼ 2 record(s). Type a keyword to filter.

| Date | Event Type | Additional Information |
| --- | --- | --- |
| 9/19/2024 | Plea of Not Guilty to Information/Indictment | • Charge 001: PC245(d)(1)-F Assault With Firearm on Peace Officer/Firefighter |
| 3/15/2024 | Plea of Not Guilty to Complaint | • Charge 001: PC245(d)(1)-F Assault With Firearm on Peace Officer/Firefighter |

**The Register of Actions tab only contains past proceedings, non guilty pleas, and search warrants.**

▼ 10 record(s). Type a keyword to filter.

| Date | Description | Additional Information |
| --- | --- | --- |

| 10/29/2024 | Pretrial Conference/Trial Setting - Held - Continued by Defendant | (Pomona South Dept. - M) Day 0 of 60 |
| 9/19/2024 | Arraignment - Held - Proceedings | (Pomona South Dept. - M) |
| 9/19/2024 | Plea of Not Guilty to Information/Indictment | • Charge 001: PC245(d)(1)-F Assault With Firearm on Peace Officer/Firefighter |
| 9/5/2024 | Preliminary Hearing - Held - Preliminary Hearing | (El Monte Dept. - 3) Day 29 of 30 |
| 7/25/2024 | Preliminary Hearing Setting - Held - Proceedings | (El Monte Dept. - 1) Day 0 of 30 |
| 5/16/2024 | Early Disposition Hearing - Held - Proceedings | (El Monte Dept. - 1) Day 0 of 30 |

# Exhibit 6

**From:** Shannon Leap <sleap@galipolaw.com>
**Sent:** Friday, October 11, 2024 3:50 PM
**To:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings/Request Joint Stipulation

Hi Roslynn and Missy,

Thank you for your patience on this. Dale talked to our client this afternoon and we are not agreeable to stay at this point. We understand you may need to file a motion for a stay, which we will oppose.

Thank you,

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: sleap@galipolaw.com  www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

**From:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Sent:** Friday, October 11, 2024 12:46 PM
**To:** Shannon Leap <sleap@galipolaw.com>; Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings/Request Joint Stipulation

Hi Shannon,

We are following up with you again regarding the stay and request for a joint stipulation to continue the pretrial dates and trial. You promised to get back to us today, and we need to file this stay today.

Thank you,

Roslynn

**Roslynn Wilfert**
Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Main: (213) 624-6900 | Ext.: 2415

Roslynn.Wilfert@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Sent:** Tuesday, October 8, 2024 3:31 PM
**To:** Shannon Leap <sleap@galipolaw.com>; Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings/Request Joint Stipulation

Hi Shannon,

Mr. Sanchez's case is still pending and set for a pretrial on October 29, 2024. We request a joint stipulation to continue pretrial dates and trial while you wait to hear back from Mr. Sanchez's criminal attorney regarding our request for a stay on civil proceedings.

Thank you,

Roslynn

**Roslynn Wilfert**
Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Main: (213) 624-6900 | Ext.: 2415

Roslynn.Wilfert@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The
information transmitted in or with this message is intended only for the person or entity to which it is addressed and may
contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified
that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this
communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying
to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

---

**From:** Shannon Leap <sleap@galipolaw.com>
**Sent:** Tuesday, October 8, 2024 9:53 AM
**To:** Missy OLinn <Missy.OLinn@manningkass.com>; Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen
<Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy
<Robert.Murphy@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Hi Missy,

We are waiting to hear back from Mr. Sanchez's criminal defense attorney regarding the status of the criminal case, and
should have an answer by Friday.

Thank you,

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland
Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: sleap@galipolaw.com  www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED
INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT,
PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

---

**From:** Missy OLinn <Missy.OLinn@manningkass.com>
**Sent:** Tuesday, October 8, 2024 8:23 AM
**To:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Cc:** Shannon Leap <sleap@galipolaw.com>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel
<slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores
<Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Mireya Linares
<Mireya.Linares@manningkass.com>
**Subject:** Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Shannon - Checking back on this getting filed. I believe you have been planning to take care of it for several weeks now.

Sent from my iPhone

**Missy OLinn**
Equity Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Direct: (213) 430-2638 | Mobile: (213) 392-6535
Missy.OLinn@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco



Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

On Oct 2, 2024, at 8:11 PM, Roslynn Wilfert <Roslynn.Wilfert@manningkass.com> wrote:

Dear Shannon,

I am following up again regarding the stipulation to stay on the civil proceedings. Please let us know when we can expect to receive the draft of the stipulation.

Thank you,

Roslynn

**Roslynn Wilfert**
Partner

801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Main: (213) 624-6900 | Ext.: 2415

Roslynn.Wilfert@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Sent:** Thursday, September 26, 2024 3:37 PM
**To:** Shannon Leap <sleap@galipolaw.com>; Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Hi Shannon,

This correspondence is regarding the stipulation to stay civil proceedings. Please forward the draft of the stipulation at your earliest convenience.

Thank you,

Roslynn

**Roslynn Wilfert**
Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Main: (213) 624-6900 | Ext.: 2415

Roslynn.Wilfert@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Shannon Leap <sleap@galipolaw.com>
**Sent:** Tuesday, September 17, 2024 6:53 PM
**To:** Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado

<Adriana.Alvarado@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND
REQUEST

Hi Missy,

Yes – we will send it over, probably tomorrow.

Thank you!

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite
310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email:
sleap@galipolaw.com  www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND
PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE
NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE
ORIGINAL MESSAGE.

**From:** Missy OLinn <Missy.OLinn@manningkass.com>
**Sent:** Tuesday, September 17, 2024 12:48 PM
**To:** Shannon Leap <sleap@galipolaw.com>
**Cc:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Dale K. Galipo <dalekgalipo@yahoo.com>;
Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen
<Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E.
Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado
<Adriana.Alvarado@manningkass.com>
**Subject:** Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Shannon – Awaiting the stip for this one. Thanks

**Missy OLinn**
Equity Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Direct: (213) 430-2638 | Mobile: (213) 392-6535
Missy.OLinn@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco



6



Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Shannon Leap <sleap@galipolaw.com>
**Sent:** Monday, September 16, 2024 4:46 PM
**To:** Missy OLinn <Missy.OLinn@manningkass.com>
**Cc:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Hi Missy and Roslynn,

We are agreeable to a stay in this case. I can prepare a stipulation and send it to you for your approval.

Thank you,

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: sleap@galipolaw.com  www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

**From:** Missy OLinn <Missy.OLinn@manningkass.com>
**Sent:** Thursday, August 1, 2024 10:18 AM
**To:** Shannon Leap <sleap@galipolaw.com>
**Cc:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>
**Subject:** Re: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings SECOND REQUEST

Received.

Sent from my iPhone

**Missy OLinn**
Equity Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Direct: (213) 430-2638 | Mobile: (213) 392-6535
Missy.OLinn@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco





Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

On Aug 1, 2024, at 9:36 AM, Shannon Leap <sleap@galipolaw.com> wrote:


Good Morning Missy,

I spoke with county counsel and they are able to produce the records, even with the ongoing criminal case, so once we receive those, we can revisit a potential agreement to stay the case.

Thank you,

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: sleap@galipolaw.com  www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

**From:** Missy OLinn <Missy.OLinn@manningkass.com>
**Sent:** Wednesday, July 31, 2024 12:59 PM
**To:** Shannon Leap <sleap@galipolaw.com>; Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>
**Cc:** Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores

8

<[Delia.Flores@manningkass.com](mailto:Delia.Flores@manningkass.com)>; Robert E. Murphy
<[Robert.Murphy@manningkass.com](mailto:Robert.Murphy@manningkass.com)>; Adriana Alvarado
<[Adriana.Alvarado@manningkass.com](mailto:Adriana.Alvarado@manningkass.com)>
**Subject:** Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings
SECOND REQUEST

Shannon and Dale –

I believe that is the issue that the COLA is having.  Given the fact that the criminal
proceedings have been reinstituted (as we just learned) the COLA is evaluating whether
they can produce the file.  To be clear, we have not weighed in on that decision.  My
position is that is there decision.  However, I do believe that having made the request
for the order, your office should provide a status report to the court regarding same and
I do believe that a stay is clearly appropriate.

I leave it to you.

**Missy OLinn**
Equity Partner



801 S. Figueroa St., 15th Floor
Los Angeles, CA 90017
Direct: (213) 430-2638 | Mobile: (213) 392-6535
[Missy.OLinn@manningkass.com](mailto:Missy.OLinn@manningkass.com) | [manningkass.com](http://manningkass.com)

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco





Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Shannon Leap <[sleap@galipolaw.com](mailto:sleap@galipolaw.com)>
**Sent:** Wednesday, July 31, 2024 9:31 AM
**To:** Roslynn Wilfert <[Roslynn.Wilfert@manningkass.com](mailto:Roslynn.Wilfert@manningkass.com)>; Dale K. Galipo
<[dalekgalipo@yahoo.com](mailto:dalekgalipo@yahoo.com)>; Santiago Laurel <[slaurel@galipolaw.com](mailto:slaurel@galipolaw.com)>
**Cc:** Athena N. Reddersen <[Athena.Reddersen@manningkass.com](mailto:Athena.Reddersen@manningkass.com)>; Missy OLinn
<[Missy.OLinn@manningkass.com](mailto:Missy.OLinn@manningkass.com)>; Delia Flores <[Delia.Flores@manningkass.com](mailto:Delia.Flores@manningkass.com)>;

9

Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado
<Adriana.Alvarado@manningkass.com>
**Subject:** RE: Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings
SECOND REQUEST

Good morning,

We are considering an agreement to stay the case, however, we are waiting for the
LASD to produce the investigation file pursuant to the Court's order and would like to
receive those documents before agreeing to a stay.

Thank you,

**Shannon Leap, Associate Attorney** | **The Law Offices of Dale K. Galipo** | 21800 Burbank
Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax:
+1.818.347.4118 | Email: sleap@galipolaw.com   www.GalipoLaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN
CONFIDENTIAL, AND PRIVILEGED INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR
DISTRIBUTION IS PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE
SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

---

**From:** Roslynn Wilfert <Roslynn.Wilfert@manningkass.com>
**Sent:** Tuesday, July 30, 2024 2:16 PM
**To:** Dale K. Galipo <dalekgalipo@yahoo.com>; Shannon Leap <sleap@galipolaw.com>;
Santiago Laurel <slaurel@galipolaw.com>
**Cc:** Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Missy OLinn
<Missy.OLinn@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>;
Robert E. Murphy <Robert.Murphy@manningkass.com>; Adriana Alvarado
<Adriana.Alvarado@manningkass.com>
**Subject:** Sanchez, A. (PC) Plaintiff's Pending Criminal Case/Stay on Civil Proceedings
SECOND REQUEST

Dear Mr. Galipo,

This email is regarding our Second Request for a stay of the civil proceedings. As you
were previously informed, the Los Angeles County District Attorney's Office has filed
charges against your client. Please let us know if you are aware of this and if that is your
understanding. Given the pending criminal case, we propose a stay on the civil
proceedings. Please advise us of your position on a stay.

Regards,

Roslynn Wilfert

**Roslynn Wilfert**
Partner



801 S. Figueroa St., 15th Floor

Los Angeles, CA 90017
Main: (213) 624-6900 | Ext.: 2415

Roslynn.Wilfert@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP