Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Shannon J. Leap, Esq. (SBN 339574)
sleap@galipolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

*Attorneys for Plaintiff Angel Sanchez*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL SANCHEZ<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF BALDWIN PARK; ERIC CAMACHO; JOSE CASTRO; and DOES 1-10, Inclusive,<br><br>        Defendants. | **Case No. 2:23-CV-03807-DMG-MAR**<br>*District Judge Dolly M. Gee*<br>*Magistrate Judge Margo A. Rocconi*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C, 8th Floor<br>Date: December 13, 2024<br>Time: 9:30 a.m. |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    ARGUMENT.............................................................................................2

  A.    Legal Standard ....................................................................................2

    1.    The Impact of Plaintiff's Invocation of a Fifth Amendment Privilege is Insufficient to Justify a Stay. ............................................................3

    2.    Plaintiff Has a Strong Interest in Proceeding Expeditiously. ...................4

    3.    Proceeding With the Civil Action Poses No Burden Defendants or Judicial Resources.........................................................................6

    4.    The Public Interests Weigh in Favor of the Civil Case Proceeding.......11

III.   CONCLUSION .......................................................................................13

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*,
   743 F.2d 1519 ...................................................................................4

*AmerisourceBergen Corp. v. Roden*,
   495 F.3d 1143 .................................................................................12

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
   69 F.3d 337 .....................................................................................13

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 .....................................................................................3

*Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*
   490 F.3d 718 ...............................................................................4, 5, 7

*Comm'n on Peace Officer Standards & Training v. Superior Court*,
   42 Cal. 4th 278 ...............................................................................11

Cunningham v. Gates,
   312 F.3d 1148 ...................................................................................6

*ESG Capital Partners LP v. Stratos*,
   22 F. Supp. 3d 1042 ..........................................................................5

*Estate of Lopez v. Suhr*,
   No. 15 Civ. 01846, 2016 WL 1639547 .............................................3

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
   889 F.2d 899 .....................................................................................3

*Gonzalez v. Cty. of Merced*,
   289 F. Supp. 3d 1094 .......................................................................11

Heck v. Humphrey.
   512 U.S. 477 ...........................................................................6, 7, 10

*Hooper v. City of San Diego*,
   629 F.3d 1127 ...............................................................................9, 10

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322, 324 .......................................................................3, 4, 7

*Lemos v. Cnty. of Sonoma*,
   40 F.4th 1002 ...........................................................................6, 9, 10

*Lizarraga v. City of Nogales Arizona*,
   No. CV 06–474 TUC DCB, 2007 WL 215616 ................................13

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*,
   457 U.S. 423 ....................................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

*Nelson v. Campbell,*
  541 U.S. 637 ............................................................................................... 7

*Pagtalunan v. Galaza,*
  291 F.3d 639 ........................................................................................... 4, 5

*Rivas v. Cal. Franchise Tax Bd.,*
  619 F. Supp. 2d 994 ................................................................................. 12

*Rodriguez v. City of Long Beach,*
  No. SACV 10-00271 DOC, 2011 WL 3757122 ....................................... 8

*Sanford v. Motts,*
  258 F.3d 1117 ............................................................................................. 8

*Scheuerman v. City of Huntsville,*
  373 F. Supp. 2d 1251 ............................................................................... 12

*Sec. & Exch. Comm'n v. Braslau,*
  2015 WL 9591482 ...................................................................................... 3

*Smith v. City of Hemet,*
  394 F.3d 689 ................................................................................. 9, 10, 12

*Speer v. Cnty. of San Bernardino,*
  No. EDCV 20-44 JGB (SPX), 2020 WL 3882940 .................................. 8

*Wallace v. Kato*
  549 U.S. 384 ............................................................................................... 7

*Waller v. Georgia,*
  467 U.S. 39 ............................................................................................... 11

*Younger v. Harris,*
  401 U.S. 37 (1971) .................................................................................. 11

**Statutes**
California Penal Code 245(d) .................................................................. 7, 9

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

2

**I.      INTRODUCTION**

3       The Court should deny Defendants' Motion to Stay this case for three reasons.

4   First, the *Keating* factors weigh in favor of Plaintiff, and not staying the case.

5   Second, Defendants' argument that *Heck v. Humphrey* could bar the civil case is

6   premature and misconstrues the doctrine. Third, Defendants' argument that

7   abstention pursuant to *Younger* applies to the substantive and procedural posture of

8   these parallel cases is misplaced.

9       This civil rights case arises out of the May 21, 2021 shooting of Angel Sanchez

10  ("Mr. Sanchez") Baldwin Park Police Department Officers, Jose Castro ("Castro")

11  and Eric Camacho ("Camacho"). On that date, at approximately 9:00 p.m., Mr.

12  Sanchez was a backseat passenger in a Chevrolet Tahoe. The Tahoe stopped at a

13  stop sign at the intersection of Phelan Avenue and Cavette Place, in the City of

14  Baldwin Park. Officers Camacho and Castro, who were in an unmarked police

15  vehicle also pulled to the intersection and stopped at the stop sign to the right of the

16  Tahoe. Castro drove the Charger and flashed the vehicle's spotlight at the Tahoe.

17  The Tahoe then turned left, onto Phelan Avenue, travelling away from the

18  Defendant Officers. Castro and Camacho initiated a traffic stop of the Tahoe for

19  alleged tinted windows and for stopping too long at the stop sign. Mr. Sanchez

20  testified in his deposition that when the Tahoe pulled to the side of the road, he

21  opened the back passenger door, ran up the sidewalk, and tossed a gun over the

22  fence of the house, in an attempt to not get in trouble for having the gun. Mr.

23  Sanchez testified that he did not look at or see the Defendant Officers when he

24  exited the car, or when he tossed the gun. He did not see the Defendant Officers

25  until after he was shot and on the ground, on the sidewalk towards the front of the

26  Tahoe. At no time did Mr. Sanchez point the gun at anyone, including the Defendant

27  Officers. As Mr. Sanchez was tossing the gun, Camacho, who was behind Mr.

28  Sanchez, fired his duty weapon six times, and Camacho, fired at least once from the

front side of the Tahoe, despite not having seen a gun in Mr. Sanchez's hands at any time. Mr. Sanchez was struck at least four times, including to the side-back of his right leg, his lower left leg, and buttocks, received emergency surgery, and survived the shooting. However, as a result of the shooting, Mr. Sanchez sustained permanent, life-long injuries including what his medical care providers have advised him is permanent nerve damage to his lower left leg.

Following the shooting, the Los Angeles District Attorney's Office charged Mr. Sanchez with one count of Assault with a Deadly Weapon on a Peace Officer. Those charges were ultimately dismissed. However, several months after filing his complaint in this instant law suit, the Los Angeles District Attorney's Office re-filed the charges against Mr. Sanchez. That case remains pending in Los Angeles County Superior criminal court.

Mr. Sanchez sat for his deposition in the instant civil rights case on November 5, 2024, which lasted for approximately six hours. In his deposition, Mr. Sanchez provided substantive testimony regarding the facts and circumstances of the incident itself, his injuries (consistent with that described above), his educational and employment background, and many other areas of questioning bearing on the parties claims and defenses in this action. Mr. Sanchez did assert his Fifth Amendment Privilege to certain questions, as is his constitutional right. Defendants' remedy is not to stay the entire civil case because Mr. Sanchez could assert his Fifth Amendment privilege against self-incrimination. Instead, the Federal Rules of Evidence and Civil Procedure anticipate circumstances like these – Defendants may, and likely will request that an adverse inference instruction be provided to the jury, should this case proceed to trial.

## II.    ARGUMENT

### A. Legal Standard

The decision to stay legal proceedings is within the Court's discretion. However, it is the requesting party's "heavy burden" to make a "strong showing,"

that a civil case should be stayed. *Estate of Lopez v. Suhr*, No. 15 Civ. 01846, 2016 WL 1639547, at *3 (N.D. Cal. Apr. 26, 2016) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem to require such action," and upon the moving party showing "substantial prejudice to the rights of the parties involved." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). District courts generally consider "the extent to which the defendant's [F]ifth [A]mendment rights are implicated" as well as the following factors in determining whether to stay a case:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating*, 45 F.3d at 324-25 (citing *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1980) ("*Molinaro*")). Here, Plaintiff contends that the *Keating* factors strongly weigh against staying this matter.

### 1. The Impact of Plaintiff's Invocation of a Fifth Amendment Privilege is Insufficient to Justify a Stay.

"When deciding whether to grant a stay of civil proceedings, the Court first considers the extent to which the defendant's Fifth Amendment rights are implicated." *Sec. & Exch. Comm'n v. Braslau*, 2015 WL 9591482, at *2 (C.D. Cal. Dec. 29, 2015) (citing *Keating*, 45 F.3d at 324). A criminal defendant's Fifth Amendment right is "an important consideration," but "it is only one consideration to be weighed against others." *Keating*, 45 F.3d at 326. In *Keating*, and as is generally the case in the context of requests to stay, the party requesting a stay of civil proceedings is the defendant in the criminal proceeding. Therefore, whether the

criminal defendant intends to invoke their Fifth Amendment privilege in their criminal proceeding is a relevant consideration in determining whether to it is in the "interest of substantial justice" to stay the civil proceeding in light of the parallel criminal proceeding. *Keating*, 45 F.3d at 324.

Here, it is *non-movant*, and Plaintiff Angel Sanchez is also the criminal defendant. Mr. Sanchez has already sat for a six-hour deposition in this case, and testified substantively regarding the facts and circumstances of this incident, his injuries, and many other areas of Defendants' questioning. Mr. Sanchez did invoke his Fifth Amendment Privilege to questions regarding any alleged gang membership, illicit drug use, past criminal convictions and arrests, among other topics. However, the lion's share of Mr. Sanchez's deposition testimony was substantive. Mr. Sanchez's invocation of his Fifth Amendment privilege at this time, or in the future, do not merit a stay of this case, nor do they impede defendants' ability to conduct discovery, especially as to the central issues of liability and damages in this case. Other remedies other than a stay are available to defendants, including allowing the fact finder to "draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.* at 326.

### 2. Plaintiff Has a Strong Interest in Proceeding Expeditiously.

Second, the court must weigh the plaintiff's interests in an expeditious proceeding with the potential prejudice to the plaintiffs if a stay is issued. *Keating*, 45 F.3d at 325. The Ninth Circuit has warned "stays place a plaintiff effectively out of court." *Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.* ("Blue Cross") 490 F.3d 718, 724 (9th Cir. 2007). Even if litigation may eventually resume, [] stays create a "danger of denying justice by delay." *Blue Cross*, 490 F.3d at 724 (citing *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524 (11th Cir. 1984)). Delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). Witnesses may also

1    become unavailable or leave the area, which poses the danger of prejudice both in

2    terms of the loss of critical evidence and also in terms of added costs associated with

3    securing that evidence.

4        Mr. Sanchez has an "interest in having [his] case resolved quickly." *ESG*

5    *Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014). Over

6    three years have passed since the officer involved shooting. Moreover, the Los

7    Angeles District Attorney's Office re-filed the charges in July 2023. Although this

8    information was publicly available, and the Defendant Officers testified that they

9    were aware of the criminal case, yet, Defendants only now seek a stay until the

10   resolution of the parallel criminal case. Additionally, in their Motion, Defendants

11   represent that Mr. Sanchez's criminal case is set for trial in January 2025, but

12   provide no evidence to support this representation. The court overseeing Mr.

13   Sanchez's criminal case set a pre-trial conference for January 8, 2025, however, the

14   docket does not reflect any set trial date. In the event that Mr. Sanchez's trial in his

15   criminal case is scheduled for January 2025, and goes forward at that time, then the

16   outcome of the criminal case will be determined prior to the trial date in this civil

17   case and a stay would be unnecessary. The parties will be able to make any

18   necessary determinations about the civil case at that time. If the criminal case gets

19   continued beyond the purported trial date of January 2025, an indefinite stay of this

20   civil case, without certainty of when the criminal case would be resolved would

21   certainly prejudice Mr. Sanchez in litigating his civil rights case. Again, the criminal

22   charges against Mr. Sanchez were filed only *after* Mr. Sanchez filed his civil rights

23   case.

24       Courts routinely acknowledge the interest plaintiffs have in expeditious

25   litigation, recognizing that stays create a "danger of denying justice by delay." *Blue*

26   *Cross,* 490 F.3d at 724 (9th Cir. 2007). This is in part because delay "inherently

27   increases the risk that witnesses' memories will fade and evidence will become

28   stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002); see also *Estate of*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

*Lopez*, 2016 WL 1639547, at *4 ("Nearly 14 months have passed since the shooting of Perez Lopez, and the Court agrees with Plaintiffs that the memories of witnesses, especially those who may not be cooperating with the SFPD, may fade with time."). A potentially indefinite stay of this case will mean an indefinite delay of Plaintiff's trial, and the risk of witness' memories fading will only increase as time continues.

### 3. Proceeding With the Civil Action Poses No Burden Defendants or Judicial Resources.

Defendants face no burden in the development of facts and evidence in this case. Indeed, Plaintiff's criminal case has been on-going for almost the entire duration of this civil case and Defendants have clearly not experienced a burden. Plaintiff has cooperated with all discovery requests and sat for a deposition. Defendants have deposed one of Plaintiff's medical care providers and another is scheduled to be deposed on November 26, 2024. Therefore, Defendants argument that Mr. Sanchez's criminal case prejudices Defendants in their collection of facts and evidence in the civil case fails.

Defendants primarily argue prejudice and that a stay is warranted due to a hypothetical bar to Mr. Sanchez's claims due to *Heck v. Humphrey*. 512 U.S. 477 (1994). This argument is misplaced and broadens the applicability of *Heck* to the extreme. Under the Supreme Court decision in Heck, a plaintiff whose prior criminal conviction arising out of the same circumstances as their civil rights violation may not bring a civil rights claim that would necessarily invalidate their conviction. Heck, 512 U.S. at 487; see also Cunningham v. Gates, 312 F.3d 1148, 1153–54 (9th Cir.2003) (as amended) (*Heck* bars suits "based on theories that 'necessarily imply the invalidity of [the plaintiff's] convictions or sentences.'") (quoting *Heck*, 512 U.S. at 487.); *see also Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022), cert. denied sub nom. *Cnty. of Sonoma, California v. Lemos*, No. 22-366, 2022 WL 16909203 (U.S. Nov. 14, 2022) "Under *Heck*, a section 1983 action is barred if success in the action would "necessarily require the plaintiff to

1  prove the unlawfulness of his conviction or confinement."). Indeed, since its

2  decision in *Heck*, the Supreme Court has taken care to emphasize the importance of

3  the term "necessarily" in that decision so as to not "cut off potentially valid damages

4  actions as to which a plaintiff might never obtain favorable termination – suits that

5  could otherwise have gone forward had the plaintiff not been convicted." *Lemos,* 40

6  F.4th at 1006, quoting *Nelson v. Campbell,* 541 U.S. 637, 647 (2004).

7       The United States Supreme Court decision in *Heck* did not involve a court's

8  decision to stay an action during pending criminal proceedings, and provides no

9  basis for a stay here. The Supreme Court considered a similar question in *Wallace v.*

10 *Kato*, declining to embrace the "bizarre extension" of *Heck* to include hypothetical

11 criminal convictions. *Wallace v. Kato* 549 U.S. 384, 394-95 (2007). In so doing, the

12 *Wallace* court avoided the paradox of preventing a plaintiff from pursuing a § 1983

13 action that would impugn an anticipated future conviction until that conviction

14 occurs and is set aside. *Id.* at 394-395. Although the *Wallace* decision states in dicta

15 that the District Court does have discretion to stay a civil case pending the resolution

16 of a criminal matter, such discretion would still require the balancing of the *Keating*

17 factors, which weigh against a stay in this case. *Id.* at 395; See also *Blue Cross* 490

18 F.3d at 724, ("…it is within the district court's discretion to grant or deny such stays,

19 after weighing the proper factors." Citing *Keating,* 45 F.3d at 325.).

20      Whether a Plaintiff's claims are barred by *Heck* as the result of a conviction is

21 a highly fact-intensive inquiry. Plaintiff denies the allegations against him in the

22 criminal case, and given that he did not see, make eye contact with, or look at the

23 defendant officers as he got out of the Tahoe and that he did not point the gun at

24 anyone, including the officers, a conviction under California Penal Code 245(d) is

25 remote. However, even if a jury convicts Plaintiff, a finding that the officers were

26 acting in the lawful course of their duties at one point in the sequence of events does

27 not necessarily bar Plaintiff's use of force claims as Defendants suggest. In this

28 scenario, Defendants could have been in the lawful performance of their duties at

1    one point in the incident, and conduct supporting the P.C. 245 conviction could

2    occur at another point, and the officers' excessive use of force could occur at

3    another point in the series of events.  This would not necessarily bar Plaintiffs' civil

4    rights claims.

5        Defendants' Motion neglects the full facts and circumstances of the incident

6    and fails to explain how granting Plaintiffs relief in this civil action would

7    "necessarily imply" the invalidity of any potential conviction, nor do Defendants

8    explain how granting Plaintiffs relief in this civil proceeding would "necessarily

9    imply" the invalidity of the speculative criminal conviction. *See Speer v. Cnty. of*

10   *San Bernardino,* No. EDCV 20-44 JGB (SPX), 2020 WL 3882940 at * 3 (C.D. Cal.

11   May 4, 2020) (denying Defendant's Motion to Stay where plaintiff was charged

12   with Cal. Penal Code S 245 (d)(1) and Defendant argued that *Heck* barred the civil

13   rights case).

14       "It is undoubtedly Defendants' burden to demonstrate that the underlying

15   conviction would be invalidated should Plaintiff succeed on his § 1983 claim; to do

16   so they must point to the exact conduct for which Plaintiff was convicted under [the

17   criminal statute]."  *Rodriguez v. City of Long Beach*, No. SACV 10-00271 DOC,

18   2011 WL 3757122, at *4 (C.D. Cal. Aug. 25, 2011) (citing *Sanford v. Motts*, 258

19   F.3d 1117, 1119 (9th Cir. 2001)).  Though Mr. Sanchez disputes the allegations

20   underlying his criminal charges, *Heck* would not necessarily bar this action even if

21   he is convicted. Moreover, Defendants' presentation of the facts to this court in their

22   motion relies only on the officers' testimony, which Plaintiff disputes, and is

23   insufficient to support a finding beyond a reasonable doubt that Mr. Sanchez is

24   guilty of assault with a deadly weapon against a peace officer. Nonetheless,

25   defendants have not shown that a hypothetical conviction would necessarily

26   invalidate Mr. Sanchez's civil rights claims and therefore have not met their burden.

27       Contrary to Defendant's arguments, convictions for charges in which an

28   element of the offense is that the subject officers are acting in the lawful

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

performance of their duty (e.g. Cal. Penal Code 245(d)(2)) do not automatically bar a civil rights claim for excessive force arising out of the same events. The Ninth Circuit has developed a substantial body of law on this point. See e.g. *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005); *Hooper v. City of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011); and *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022). *Smith* and its progeny hold that if there are spatial or temporal distinctions between the time an officer used excessive force and the plaintiff engaged in the conduct for which they were ultimately convicted, the Plaintiff's excessive force claim is **not** necessarily barred by *Heck*, even if the different actions are based on a continuous transaction. *Hooper*, 629 F.3d at 1133-1134.

For example, the Ninth Circuit has addressed the application of *Heck* where excessive force occurred subsequent to the conduct on which the conviction is based. *Smith*, 394 F.3d 689. In *Smith*, the plaintiff brought excessive force claims for the officers' use of pepper spray and a canine, subsequent to the acts on which his conviction was based. 394 F.3d at 689. In concluding that *Heck* did not bar the plaintiff's Section 1983 action, the Ninth Circuit held:

> "Smith engaged in at least three or four acts in violation of § 148(a)(1) before the officers used force against him. These acts of willful resistance, delay, or obstruction occurred ***prior*** to the time that the officers had determined to arrest him for any criminal conduct. Indeed, they occurred in the course of the officers' lawful performance of their duty to investigate whether an offense had occurred. The acts by Smith include twice refusing to take his hands out of his pockets, reentering his home once; repeatedly refusing to put his hands on his head and come down off the porch, and, finally refusing to put his hands on his head and turn around. Each of these acts constituted a violation of § 148(a)(1) sufficient to warrant the filing of a criminal charge. Each could support a conviction under that section for obstructing the criminal investigation.
>
> ...
>
> Under *Heck*, Smith would be allowed to bring a § 1983 action, however, if the use of excessive force occurred ***subsequent*** to the conduct on which his conviction was based. Specifically, Smith would

> be entitled to proceed [in the District Court] if his conviction were based on unlawful behavior that took place while he stood alone and untouched on his porch-that is, if his unlawful conduct occurred while the officers were attempting to investigate his wife's complaint. In such case, a judgment in Smith's favor would **not** necessarily conflict with his conviction because his acts of resistance, delay, or obstruction would have occurred while the officers were engaged in the lawful performance of their investigative duties, not while they were engaged in effecting an arrest by the use of excessive force."

*Id.* at 697–98 (emphasis added).

A plaintiff's allegation of excessive force by a police officer is not barred by *Heck* if the officer's conduct is distinct temporally or spatially from the factual basis for the plaintiff's conviction. *Lemos,* 40 F.4th at 1006-1007. Moreover, *Heck* does not necessarily bar an excessive force claim under § 1983 when the criminal defendant enters into a plea agreement and when the conviction and the § 1983 claim are based on different actions taken during one continuous transaction. *Hooper*, 629 F.3d 1127, 1134. Thus, a Plaintiff may overcome a *Heck* bar so long as he can show some change in factual circumstances that renders an otherwise lawful arrest unlawful during the course of a single continuous transaction. *Id*. For instance, in *Hooper*, a woman who had previously resisted officers had ceased resisting by the time the officers used excessive force in the form of a bite dog, such that her civil claims with regard to the bite dog were not barred by *Heck*. *Id*. Additionally, *Lemos* and *Smith* each involved plaintiffs/criminal defendants charged with resisting arrest, which also requires the prosecution to prove that the officers were engaged in the lawful performance of their duties. However, in both cases, the Ninth Circuit found that the plaintiffs' convictions did not necessarily bar their civil rights, use of force claims. See *Lemos*, 40 F.4th at 1007 (concluding that "if [plaintiff] were to prevail in her civil action, it would not necessarily mean that her conviction was invalid" and that "[t]he action is therefore not barred by Heck") (emphasis in original); *Smith*, 394 F.3d at 699 ("Because on the record before us we cannot determine that the actions that underlay [the plaintiff's] conviction upon his plea of guilty occurred

at the time of or during the course of his unlawful arrest, [the plaintiff's] success in the present action would not necessarily impugn his conviction.").

Moreover, it is just as likely as Defendants' assumption of a conviction that Mr. Sanchez is acquitted, or that a jury in the criminal case makes factual findings that answer these spatial and temporal questions, showing that the use of force occurred at a different time than any alleged conduct related to P.C. 245(d)(2). Therefore, whether a claim is barred under *Heck* is a highly fact-intensive inquiry. It would be premature to stay this civil rights matter based on a hypothetical conviction.

### 4. The Public Interests Weigh in Favor of the Civil Case Proceeding.

Courts routinely recognize that the public has "a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny." *Waller v. Georgia*, 467 U.S. 39, 46-47 (1984); see also *Comm'n on Peace Officer Standards & Training v. Superior Court*, 42 Cal. 4th 278, 297 (2007) ("The abuse of a patrolman's office can have great potential for social harm."). In addition, "the public does have an interest in ensuring that the victim is made whole as rapidly as possible." *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1129 (E.D. Cal. 2017).

To the extent Defendants argue that it is in the public's interest in applying the *Younger* abstention, such an argument is misplaced. Abstention pursuant to *Younger* is appropriate where (1) there are ongoing state judicial proceedings, (2) that implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Younger v. Harris,* 401 U.S. 37 (1971), *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Once these three threshold elements are met, a court may properly abstain "if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d

1143, 1149 (9th Cir. 2007) (citation and footnote omitted). The first two elements are not in dispute.

Under the third *Younger* element, however, Plaintiff lacks an adequate opportunity to raise his civil claims against defendants in the state criminal proceedings. While Defendants may have an opportunity to claim Mr. Sanchez allegedly pointed a firearm at officers in the both proceedings, their use of force before or after the alleged conduct of Mr. Sanchez is completely irrelevant in the state criminal proceedings. Mr. Sanchez cannot litigate the violation of his constitutional civil rights in the parallel criminal proceeding, his claims against the City (who is not a party to the criminal action) pursuant to *Monell,* nor could Mr. Sanchez seek relief in the form of monetary damages for the injuries he has sustained as a result of the defendant officers' use of deadly force. As discussed above, it is possible that Mr. Sanchez could be convicted even without any regard as to whether Defendants later used excessive deadly force against him. *See Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc) ("[A]s long as the officers were acting lawfully at the time the violation of § 148(a)(1) took place, their alleged acts of excessive force, whether they occurred before or after Smith committed the acts to which he pled, would not invalidate his conviction.").

Thus, the constitutionality of Defendants' actions – including shooting Mr. Sanchez – is completely irrelevant to the criminal prosecution. Accordingly, *Younger* cannot justify a stay in this action. See *Scheuerman v. City of Huntsville*, 373 F. Supp. 2d 1251, 1257 (N.D. Al. 2005) (declining to stay under *Younger* a § 1983 excessive force claim brought against city and police officer who shot attempted murder suspect while effecting arrest); see also *Rivas v. Cal. Franchise Tax Bd*., 619 F. Supp. 2d 994 (E.D. Cal. 2008) (declining to stay excessive force claims because they had no bearing on the pending criminal prosecution). For the same reasons, under the third *Younger* element, this Court's action in resolving Plaintiffs' civil claims will not have the practical effect of enjoining the criminal

proceedings. While Defendants conclude the civil claims would frustrate or enjoin criminal proceedings, Defendants fail to point out how or why they would.

In sum, the interests of the public do not support a stay.  The public interest favors speedy disposition of cases on their merits, particularly in civil rights cases. *See*, *e.g.*, *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *Lizarraga v. City of Nogales Arizona*, No. CV 06–474 TUC DCB, 2007 WL 215616, *4 (D. Ariz. Jan. 24, 2007).  Further, the public interest in police shooting cases has never been higher, and the public has a great interest in a police shooting case in which a young man was shot by law enforcement. Accordingly, given the public's interest in fairness and justice, as well as police shootings, this factor weighs against a stay.  Courts also consider "the convenience of the court in the management of its cases, and the efficient use of judicial resources[.]" *Keating*, 45 F.3d at 325.  The Ninth Circuit has held that a district court has an interest in clearing its docket and that this factor weighs in favor of denying a motion to stay. *Molinaro*, 899 F.2d at 903.  When weighing all the factors, Plaintiffs would be prejudiced if a total stay were ordered.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendants' motion in its entirety and not stay this civil rights case.

Respectfully submitted,

DATED:  November 22, 2022          **LAW OFFICES OF DALE K. GALIPO**

By: _____
*/S/ Shannon J. Leap*
Dale K. Galipo
Shannon J. Leap
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2</u>

I, Shannon J. Leap, counsel of record for Plaintiff and filer of this document certifies
that this brief contains 4,509 words, which complies with Civil L.R. 11-6.1


By:      */s/ Shannon J. Leap*
Shannon J. Leap
Attorneys for Plaintiff Angel Sanchez